Good morning. May it please the court. Well, I'm Scott McMickle. I represent the Appellant National Casualty Company in this case along with Joel Flom. I've reserved five minutes for my rebuttal. Well, this dispute centers upon whether or not there's coverage under one or two policies or none in front of this court. There's a national casualty policy which was issued to Avery Enterprises, which is a motor carrier operating in the Bakken oil patch, and it was designed to cover the trucking operations of that entity. On the other hand, you've got Great West Casualty, which issued what's commonly referred to as a non-trucking policy to Mr. Heinous, who is an owner-operator that owned the tractor and trailer and leased it to Avery Enterprises. And in fact, Heinous actually operated the tractor-trailer for Avery when it was hauling loads of water and flow water back and forth in the Bakken Basin. Now, I'm not going to go into too many facts, but I do think that it's important to note that Heinous had an 85-15 revenue split with Avery. He was only paid when he was hauling loads. At some point, Heinous noticed that the loading pipe, which is where the water and the flow water comes in and out of the trailer to be stored or transported, had what he called a fine crack that only leaked when the trailer was being loaded or unloaded. In other words, it didn't leak when the cargo was being transported. According to Heinous, who has the only admissible testimony, the leak was not significant, didn't interfere with the work, and was not getting worse. Heinous could go anywhere he wanted to have this fine crack repaired. He chose Avery's place because it just happened to be the most accessible or the easiest place for him to go to. It's important to note that he... Pelley says that it's conceded in the record that Mr. Avery insisted you won't get another load to haul until you get that crack repaired. Well, that's after the fact, and there's certainly a conflict with Mr. ... Let me say it this way, Judge. Mr. Avery never saw this crack before the subject situation. That wasn't my question. Did Avery say, you know, get the crack fixed before you do another load? Avery said that, but Heinous disagreed, Your Honor. So there's a... Wait, wait, wait, wait. He said it before the repair. Your Honor, my understanding... Heinous heard him say that. Heinous may have disagreed as to the seriousness of the crack, but did he understand that Avery said you won't be hauling anymore for me till you get that crack fixed? No, that's not what I believe the record says. What I believe the record says is that Heinous and Avery talked about getting the repair done at Avery, but there was no order from Avery saying that the repair had to be done. Well, let me ask you this. What was it... Was it something that was dripping from this crack that caused the explosion? I think that that is not known. That is not known. I think what the record would reflect is that the trailer itself was not pumped out properly and allowed to air dry for a while, which is what I think common sense dictates, that that's really what caused the explosion. If you're hauling water, so why would water cause an explosion? Well, there's water in flow water. Flow water is something more than water and it could have something that could be combustible. But isn't that the point, though? If you have a material that's potentially combustible that's leaking from your trailer, isn't that something that needs to be fixed? Well, it's only leaking during the loading and unloading process, okay? So that's, but it's limited to that specific time. It could be easily remedied by the bucket. It'll only cause an explosion when there are more people around. Well, I'm going to read brief page 9. Avery was adamant that the pipe needed to be fixed as it presented a safety hazard. Cite appendix 135 to 136. You're representing to me that when I read those pages, which I haven't read, I will find that this brief is incorrect. Your Honor, what I'm saying is that I think that that is Avery talking about, after the fact, had he known everything that he knew, he would have said, you have to get it fixed. That's the context in which I understand that. But, Your Honor, I mean, it strikes me that the reason Highness brought it to Avery was, was he was, he was covering, he was covering himself under the contract. Here, if you, if you think I ought to get this fixed, you fix it. So then when you're satisfied, we'll move on. I'll do the next haul. That's not in the record. That could be. That's possible. Your Honor, that's not an unreasonable statement. I'd be, I'd be fairly confident on that. Yeah, I agree. I'm not here to say it's not. Your Honor, let's, let's assume it was reasonable that, that he needed to get it fixed. You're dealing with something that's flammable, does explode. And let's assume that's not unreasonable, that that, that the judge Miller was right, that that was a necessary repair. What's your best argument, assuming it's a necessary repair? Is that your, is your, is that your, pretty much your whole case? Oh, it's not, it's not even close to being the whole case. And one of the things I don't want to get bogged down on is whether that issue drives whether there's coverage under the national casualty policy. That issue only drives whether or not Highness might initially qualify as an insured. It has nothing to do with whether or not the Eighth Circus decision in the Farmer's Elevator case or the Universal Underwriters case or the Northern District of, or the Supreme Court of North Dakota in the Norgard case, those three decisions, this court would have to reject all three of those decisions to find that there's coverage under the, the national casualty policy based upon the application of the employee exclusions. So I'll, so I'll get to that. Because I do think that this issue about whether or not it's a necessary repair, which I think is a fact question. Okay, but if it's not, the best argument, that's, that's in that, that, that discussion, if you will, of whether or not Highness, at the time of this accident, is in the business of Avery. Okay? There's two lines of cases. If you look, I think it's at page 14 of the, of the trial court's order, the court said there's the Supreme Court of Nebraska case and the Neal, the Neal case, and then there's a Michigan Court of Appeals case, it's a Zurich case, where they said when we're defining in the business of narrowly, which is the way it should be interpreted here, we're going to look to the lease, and if the lease says that the obligation is the lessor, the owner-operator, Mr. Highness, then we're going to say it's in his business. If it's the obligation of the lessee, then we're going to say it's the lessee's business. So that is the- Distinguish Judge Hanson's opinion in National, what is it, National Continental. Distinguish that case? Yeah. Well, I believe- That case establishes that when the, when the tractor was there, it's covered, right? It's covered at the repair shop. Well, you know, that case says that when the lessee, excuse me, lessor is specifically directed by the lessee to have the repair that it's in the business of. You just said, that was Judge Malloy's, you just said, well, all that decides is that Highness was an insured. No, National Convention says more than that. No, no sir, it doesn't. Bringing the tractor to Avery's repair shop was, was within the, was in the business. Well, yeah, Your Honor, if, if Highness is in the business of Avery, all that does under the National Casualty Policy, if he is exclusively in the business of Avery- No, that's the trailer. I'm starting with the tractor on purpose. The tractor's there, right? The tractor was there, yes sir. And under National Convention, as I read it, particularly when we clarify that this was a necessary repair for safety reasons, that was within the business. It's covered. If the tractor blows up- It is, yes. Okay, now, is, is the exclusivity reference in the trailer provision, the specific trailer provision, is that an ISO provision? Yes sir, it is. All right, so what, where, where are, what cases around the country have talked about the meaning of if not connected? Your Honor, there's not much because it- Well, you can give me any. It is, it is. I'm completely focused. I think the plain wording is what it is. There is no case that I'm aware of that says- Okay, now, now, it, it, the plain wording is in the context of the recognition that tractors and trailers don't have to, don't have to be doing the same thing at the same time. And, and therefore, and therefore, if the, if the tractor is more or less dedicated to the, to the lessee, but the, but the trailer could be off doing something else. We, and now we have the tractor and the trailer come together at the repair shop. The tractor is there within the business, within, for coverage purposes, within the lessee's business. And we have a fact dispute, apparently, about whether at the time of the explosion, the trailer had been unhooked from the tractor. Yes sir, that is a fact question. Yes sir. And I say, in the context of these clauses, the mere unhooking for purposes of repair convenience or necessity does not mean not connected for purposes of coverage. What's wrong with that position? Well, Your Honor, if not connected, I think says what it says. And if the trailer's not connected, then there's a different analysis. And for the trailer to be- You'd agree if National Convention resolves the issue as to the tractor, it also resolves the issue as to the trailer. Well, I would, I would, I would agree, Your Honor, that if the track, the trailer was connected, then we would get out of this whether Highness can, qualifies as an insured discussion. And we would get to really what I think is the meat of the discussion. Your Honor, the meat of the discussion is that the Farmer's Elevator case, the 8th Circuit interpreting North Dakota law, specifically said that an additional insured like Highness- Okay. Can not- I'm just, I'm starting with the exclusivity, I'm starting with the brief start with the exclusivity issue, which went on for pages and pages and pages in the competing briefs. And to me, this question of what is connected mean is absolutely critical and gets very little focus. It is, it is an interesting issue, Your Honor, but there's about 20 issues in this case, and what I'm- Okay, but I, so you, you don't have any cases for me on- I don't on that issue because it's- Disengaged from the business of the tractor. I, I do not. I, I, I'm not aware of any case that says if, if not connected means other, anything other than literally not connected. But Your Honor, I've heard that- I just wanted, I was trying to get that one straight. Listen, there's, there's a lot of issues here, and I get that, I think that's a very legitimate one. But Your Honor, what I want to draw the court's attention to is that for this court to conclude that the employee exclusions in the National Casualty Policy do not exclude coverage, this court has to specifically reject the Farmer's Elevator case, the Universal Underwriters case, and the Northwest versus NorGuard case. Your Honor, what those cases clearly stand for under North Dakota law, which is the only law we're concerned with, is that an additional insured, like Hyness, cannot be afforded, or will not be afforded, a protection under the policy that Avery, the named insured, would not be afforded. Okay? So that is a very clear principle. The Farmer's, the trial court sidestepped the Farmer's Elevator case by saying, well, there's no, we have to presume there was no severability of interest provision there. Well, the Universal Underwriters case, this court, or in that case, this court specifically said we will presume. Is that the Sex and Molestation case? Yes, sir. That's pretty far afield. Well, the exclusions differ, but the concept is on point. Let me ask you this, because it sort of nags at me as to the farmer's issue. How strong is workers' comp exclusivity under North Dakota law? States vary a lot on that. I think it's pretty strong, as best I can tell. I mean, there has been no claim by Miller against Avery. But to the extent, Your Honor, there would be a claim by Miller against Avery, everybody in the room would agree that that is excluded. Well, your argument as to farmers would mean that Highness is not covered. Absolutely. Miller lawsuit. Absolutely. Which would promote workers' comp exclusivity. I think so. I think it's fair. Whereas, I mean, many states are happy to magnify third-party liability by judges and lawyers who don't like comp exclusivity. And I wondered if North Dakota has a culture on that. Well, the Norguard case is the only real guidance we have in North Dakota. And it clearly says that Highness, it's not going to afford coverage to somebody other than the named insured that the named insured would not receive. That is a fundamental principle that Norguard and the Farmers Elevator case and the Universal Underwriters case recognize. I'm going to save 52 seconds to come back. Thank you, Your Honor. All right, thank you. Ms. Novotny. May it please the court, counsel, my name is Tamara Novotny, and I represent the Appellee Great West Casualty Company in this matter. And where I'd like to focus my arguments is on the Great West Casualty Company policy, which is a non-trucking or bobtail insurance policy. There are obviously a number of issues raised in this appeal, but the issues or the analysis required with regard to Great West policy is relatively simple. Most of the issues actually relate to national casualties policy, including the various exclusions that it's relying on and for which it bears the burden. With regard to Great West policy, the only issue really is the in-the-business-of phrase. Since the Great West non-trucking policy would provide Mr. Hines coverage only if the trailer was not being used in the business of Kevin or Avery Enterprises at the time of the repair. So why isn't your insured here separately represented when he's got so much at stake? Well- If you're both right, he's uncovered in the underlying lawsuit. Well, yeah, he was part of the lawsuit. He's been copied with all of the briefs for whatever reason. Separately represented? He's not. He's not. He has been put on notice of the case throughout. And he, for whatever reason- Your position and what you're about to argue is he's uncovered in the underlying lawsuit. Well, no. I mean- Yes, it is. Well, my position is he's not entitled to coverage under the Great West policy. However, he would be entitled to coverage under the national casualty policy, which is what Judge Miller held in the underlying decision. There is perhaps potential that he could be left without coverage, depending on how you interpret nationals' exclusions. But, you know, as- And don't we have to be concerned if that's the case? If your client's representation of it's insured is to say the other insurer has to provide coverage. And, oh, by the way, if that's wrong, we don't either. Now we have a problem, don't we? Well, the issue is at this point, no one has figured out who actually insures Mr. Hyannis. I mean, that's kind of the fundamental issue. I understand the concept of bobtail insurance. It's not supposed to overlap. This is not like primary-secondary. Right. No, I would agree. You know, Hyannis is covered one way or the other, but not both. And the positions taken by the two insurers this morning, I hear saying, is neither. No, I mean, I would disagree with that. I do agree with you that- Possibility of neither. There is a possibility, depending on how the court rules. It seems to me your position from your client's insured standpoint should be, if they're not liable, we are. And that is our position. That's always been our position. And when we brought this declaratory judgment action, that was what we requested. Okay, so this argument you were about to make is just to avoid the primary-secondary issue? Deal with the illusory coverage. You don't need to deal with that. That's not a strong argument. I agree. No, I'm just trying to focus on looking at the Great West Casualty Company. Your position, though, is if Great West, if National Casualty doesn't cover, you would concede Great West does, under the bobtail? No. I mean, I think, generally agree that there is either coverage under one or the other, and I believe that is true in this case, that there is coverage under the business, the trucking policy issued by National Casualty, just as Judge Miller found. Let me understand here. So what you're saying is, if I understand how this situation works, if Mr. Hines is driving the truck out to one of the oil fields with a load in the business of the West Sea, and he gets in an accident, he's covered under the West Sea's policy, right? Correct. And if he's home and decides, for whatever reason, he wants to drive his truck to church on Sunday, he's covered under your policy? Yes. So the theory being that he's always covered under one or the other. And now the position is, you're saying he's not covered under yours, and they're saying he's not covered under theirs, so there's somehow a magical crack has developed where he has no coverage. I mean, that's the argument the two of you are making, right? Well, I think if you first start with the in the business of language, because that obviously determines whether or not there's coverage under the Great West policy, and in turn it would also determine whether Mr. Hines qualifies as an insured under National's policy. And that's where the court found that, in fact, he does qualify as an insured under National's policy. The only way that there would then not be coverage under National's policy available to Mr. Hines is if they can then meet their burden with respect to the exclusions that they are relying on. And our position is they have not met that burden that Judge Miller, obviously a very extensive and I think well-reasoned opinion, explained why those exclusions do not apply in this case. Your argument kind of explains to me a little bit why we spent so much time on whether this repair was necessary. Because that's arguably, I guess what the national casualty people are saying is, if it's not a necessary repair and that he could continue to operate in perfect safety with this leaking pipe, then it's not in the business and your policy covers, right? Right, that's their position. And so- Subject to whatever other defenses you might have with your insurer. I'm sorry? Subject, I mean, that coverage is not an issue in this case, so you could have notice problems or some of the other problems unique, you know, intra to an insurer, insurer, but basically it ought to be one or the other. Yes, and then I think, you know, like Judge Miller has honed in on, I mean, the reason so much time is spent in the briefs and I think why Judge Miller started with the in the business of analysis is because, again, that really kind of gets you a large part of the way through this argument, because that phrase is used in both policies determines whether Great West policy provides coverage and it also determines if Mr. Hyness is an insured. Who's actually defending Hyness in the underlying lawsuit? The underlying lawsuit at this point is basically inactive and it's, I guess, informally stayed pending a resolution on the coverage issues. Mr. Miller's counsel is, you know, informed and he's kind of just waiting for a resolution to know which insurer is going to be involved. So as I indicated, I think this case really hinges a lot on the in the business of issue and certainly that's the primary and really the main issue with regard to Great West policy. And as I'm sure you've seen from the briefs, courts from across the country have analyzed that phrase. It's a phrase that's frequently found in both trucking and non-trucking insurance policies. A fewer number of those cases have dealt with it with respect to a repair or maintenance situation, such as what we have here. But some of the key cases are repair cases. One is the Hartford Insurance v. Occidental case from the Seventh Circuit, where the court initially found the phrase is not ambiguous, contrary to what National is arguing, but that it means, quote, occasions when the truck is being used to further the commercial interests of the lessee, end quote. That is a meaning. Is that exclusivity you're talking about or in the business of? In the business of. And that Hartford definition is the one that the Circuit recognized in the National Continental case. It's also a definition that the Wisconsin Supreme Court recently adopted in 2014 in the Casey v. Smith case, which National refers to as being excellent persuasive authority. And I guess I would agree with them on that. I think the Wisconsin Supreme Court did a good job of explaining that when you have these in the business of coverage issues, you have to look at a totality of the circumstances that these become facts. Well, why isn't the National Convention good enough? National Continental? Yeah, National. Oh, I agree. It's great authority. Well, it's controlling, too. I would agree with that as well. I think the Wisconsin Supreme Court just maybe spells out a little bit more some of the factors that are considered. But certainly the National Continental case, which we discussed extensively in our brief as well as in the underlying motions, I do think is controlling. But it doesn't get you past the exclusivity question? No. The exclusivity element, of course, that's found in National's policy, I agree it has to be considered. It is a term that is not defined in the National policy. So they, as is appropriate, they look to a definition and they suggest that it should be defined as limited to possession, control, or use by a single individual or group. And that definition that they suggest actually tracks nearly word for word with the federal regulations, which provide that when you lease equipment, that the motor carrier shall have exclusive possession, control, and use of the equipment for the duration of the lease. So in other words, by leasing these vehicles from Mr. Hynes, Avery did have exclusive use, control, and possession of it. We cited the, I think favorably, the Seven Circus decision. Did Freed deal with exclusivity? The court, yes. I mean, what the court in the Freed case said was essentially because you have this regulation requiring that when you enter into a lease agreement that the motor carrier has exclusive use and control and possession, that in turn getting repairs, certainly necessary repairs, that that meets the exclusivity requirement. And we did cite in our brief some additional cases from other jurisdictions that also talk about the exclusivity requirement. I'll confess that in trying to research that issue, there doesn't seem to be a lot out there. But what those cases discussed was essentially if you're operating for a single motor carrier at the time, that that is going to be enough to meet the exclusivity requirement. Now, National tries to distinguish those cases because in those particular cases, a load was actually being transported. I would concede in this case we don't have those same facts. However, what we do have within the record, and as Judge Miller recognized, at no time since Mr. Hines entered into this lease agreement with Avery back in April of 2011, did he ever use this equipment to transport product for any other motor carrier. And in fact, under the lease agreement, it seems that he would not be able to do that and meet the other obligations under the lease agreement. So on, you're dwelling on what's not the hardest issue, for me at least. There's a reference to one of our cases under South Dakota law in the reply brief to which, what's your response to that? I don't know that there is any so far in the record. Well, my initial response would be- Approbability clause. Correct. The South Dakota cases that National relies on reflect what is clearly the minority position on this issue, and we've cited, I think, the many cases that are out there that discuss the majority opinion. And there is another case that we cite in our materials that was issued by the Eighth Circuit in 1999, and that's the United Fire v. Gravette case. And there the court was discussing an identical severability provision to that contained in National's policy, and what the court said was, quote, when applying the coverage to any particular insured, the term insured is deemed to refer only to the insured who is claiming coverage under the policy with respect to the claim then under consideration, end quote. Here, obviously, it is Mr. Hines who is facing a claim, so you have to look at this from the standpoint of him being the insured, and the facts reflect quite clearly that Miller was not an employee of Steve Hines, such that the employer's liability exclusion would apply. Well, if- Why wouldn't your client be protecting its insured by arguing that the fellow employee- Then Hines is free of- Then worker's comp exclusivity frees Hines of any liability in the underlying lawsuit. That is possibly an argument that I could see being raised in the underlying case. It's not, you know, an issue that we have raised at this point. You know, quite frankly, I know going back to the point you made earlier, usually on these trucking, non-trucking cases, one or the other is going to apply, and the courts do not like gaps in coverage. What I don't know, quite frankly, is whether if there is work comp to sort of protect the injured person, which is kind of a more unique situation, whether that would be enough to address any concerns. No, well, I don't- Under most worker's comp regimes, you can't recover from your employer or your employer's fellow employees. Correct. So if Hines is a fellow employee of Miller, the underlying lawsuit fails. And, like I said, defense counsel could possibly raise that- And your client's insured wins. I mean, it seems to me we've got a lot of positions by Great West here which are not as strong a defense of the insured as it could be. Well, and again, at this point, it's our position that he doesn't qualify as an insured under the Great West policy. We agree that he's going to be entitled to defense counsel- Who doesn't? I'm sorry? Who isn't an insured? Hines- No, I mean, he's got to be insured under NCC's policy. Well, if you find that he was exclusively in the business of, and I do believe that is the appropriate finding, I agree that national- It's excluded. Correct, but I don't believe that under the authorities, the majority view of the Graubat case, and looking at the severability provision, which I think has to be given a fact, you can't just disregard that under contract principles. I don't think that's a proper finding or that that exclusion applies. Pardon? 48 seconds. For rebuttal? I'll give you two minutes. Thank you, Your Honor. Going back to this workers' comp issue, why shouldn't we read the fellow employee exclusion in the context of workers' comp law? That is, I assume under North Dakota law, a fellow employee cannot be sued for negligence of the fellow employee. That is my understanding. And that's what this exclusion is supposed to cover. You're not going to cover the workers' comp liability under this policy. That's correct. So if he's a fellow employee, there shouldn't be any liability at all, right? That's correct. So do we look to North Dakota workers' comp law to make that determination? Your Honor, we believe that the definition of employee in the policy ought to be used in the same context that the policy itself is issued. And there's a host of courts that have looked at that definition in the context of the federal motor carrier safety regulations and said that it should be that definition. One of Your Honors mentioned the Freed case and indicated that it may be controlling precedent. Well, if you look at the Freed case, the Freed case relied heavily on the federal leasing regulations at 49 CFR 376. Well, if the leasing regulations should affect coverage there, which are in the federal motor carrier safety regulations, I would submit that the same regulations ought to apply in this context. Your Honor, there is no law out there that says there has to be coverage under one or both of these policies. That does not exist. This is not a situation where the plaintiff will be left without any recovery. It's undisputed that he has workers' comp and he's recovered. Your Honor, you pointed out the universal underwriter's case. It is directly on point. And what's interesting about the universal underwriter's case is that it relied on the Beering Cot case, which if you'll read the Farmer's Elevator case, the Farmer's Elevator case interpreting North Dakota law also relied upon. So if the Eighth Circuit rules inconsistently with the universal underwriter's case, there would have to be some basis or reason under North Dakota law to do so. And I would submit that if you'll look at the Northwest v. Norguard case, there is absolutely no basis to reach a different conclusion than that which is reached under the universal underwriter's case. Thank you, Your Honor. Your Honor, may I give you one more side? There was a—if you'll look at page 1784 of the record, Mr. Avery was asked in his deposition, at any point did you tell him, Highness, that you would require him that he have the work done at your shop? And his answer was no. What's that? 1784? 1784, yes. And there's actually four pages there. Let me give you the—it's page 44 on that. Yeah, so four pages on the same page. I'm sorry. It's page 48, lines 16 to 19. Thank you. Thank you, counsel. The case has been thoroughly briefed and argued. It's got a lot of issues, some of them complex.